## Case No. 722.

BADISCHE ANILIN & SODA FABRIK v. HIGGIN et al.

[15 Blatchf. 290;[1] 3 Ban. & A. 462; 14 O. G. 414.]

Circuit Court, S. D. New York. Sept. 25, 1878.

PATENTS FOR INVENTIONS—REISSUE—PROCESS AND PRODUCT.

1. The reissued letters patent, division B, granted to Charles Graebe and Charles Liebermann, April 4th, 1871, for an improvement in dyes or coloring matters from anthracine, are valid.

[Cited in Badische Anilin & Soda Fabrik v. Cochrane, Case No. 719; Cochrane v. Badische Anilin & Soda Fabrik, 111 U. S. 297, 4 Sup. Ct. 457.]

2. The original patent claimed "the within described process for the production of alizarine, by first preparing bibromanthrakinon, or bichloranthrakinon, and then converting those substances into alizarine, substantially as above set forth." The reissue describes the same process, producing the same substance, and claims, "Artificial alizarine, produced from anthracine, or its derivatives, by either of the methods herein described, or by any other method which will

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 3 Ban. & A. 462; and here republished by permission.]

produce a like result." The case was a proper one for a reissue.

[Cited in Smith v. Merriam, 6 Fed. 718.]

[In equity. Bill by the Badische Anilin & Soda Fabrik against James Higgin and others for infringement of letters patent. Decree for complainant.]

John Van Santvoord and George Gifford, for plaintiff.

Gilbert M. Plympton, for defendants.

WHEELER, District Judge. This suit is brought for relief against an alleged infringement of division B of reissued patent No. 4,321, to Charles Graebe and Charles Liebermann, for an improvement in dyes or coloring matters from anthracine, dated April 4th, 1871, and now owned by the plaintiff. The defences set up are, that the reissue of the patent was unauthorized by law and void, because the original patent was not inoperative nor invalid by reason of a defective or insufficient specification, nor by reason of the patentees' claiming therein, as their own invention or discovery, more than they had a right to claim, and because the reissue covers alleged inventions not shown at all in the original; that the patent is void for want of novelty of the invention, and because it is not for any invention that by law is patentable; and that the defendants do not infringe.

The original patent describes two processes by which a substance is produced, and some other processes by which one of the substances from which it may be derived is produced, and claims "the within described process for the production of alizarine, by first preparing bibromanthrakinon, or bichloranthrakinon, and then converting those substances into alizarine, substantially as above set forth." The reissued patent, Division B, describes precisely the same process, producing the same substance, and claims, "Artificial alizarine, produced from anthracine, or its derivatives, by either of the methods herein described, or by any other method which will produce a like result." The difference between the original and the whole reissue is, that the reissue, in this Division, claims the product, which the original did not claim. Whether the circumstances dehors the patent, required by the statute to authorize a reissue, existed or not, was a matter to be determined by the patent office, and, having been determined there, is not open here. Whether the reissue is for the same invention that the original was, and is such as was warranted upon that original, is open. Russell v. Dodge, 93 U. S. 460. Nothing is seen to show that the original was not valid for what it claimed. There was nothing defective or insufficient about the specification of the invention. If the statute, by specification, meant that and no more, then, on the patents themselves, it would appear that there was no ground for the reissue. But the word seems to be used in a broader sense, and to be intended to cover the specification of the claim, as well. In that sense, there was a defective specification of the invention as patented, and the patent was inoperative and invalid for that part of the invention not covered by the claim. The invention specified in each is precisely the same. The original did not cover the whole of it, and so was inoperative as to part. The reissues do cover the whole. They seem to fall exactly within the intention of the statute, in this particular. Seymour v. Osborne, 11 Wall. [78 U. S.] 516.

It is said, that the reissue attempts to cover more, and is, therefore, void, because it not only claims the substance produced by these processes, but proceeds to claim it if produced by any other method which will produce a like result. If those words enlarge the scope of the claim at all, it does seem that they claim as much as there is of the enlargement that was not in the original, and which, in fact, neither those, nor any other, inventors had then invented. That product, however, is a substance, a composition of matter. If it was new and useful, they were entitled to a patent for it. If entitled to a patent for it at all, they were entitled to one for it, however made. So, if the claim covered it without those words, it covered it as fully, for the purposes of a patent, as with them, and they did not enlarge nor vary the meaning of the claim, nor have any effect upon the patent at all.

It is further said, that the patent professes to be, and is, in fact, a patent for a result, which is not patentable at all. It is true, the claim does make use of the word "result." If it was used to signify an abstraction, it seems true enough that it would not be for anything patentable. But it is to be read with the rest of the words with which it is connected, and, when so read, its meaning is plain. The claim is for the product that will be produced by those processes. It so says. Then, when it says, "or by any other method which will produce a like result," it means any other method which will produce a like product resulting. So, the claim is all the way for a thing tangible, and not for a mere idea.

It is also suggested, that the substance is not so described in the patent as to make what it is determinable with sufficient exactness. It is called artificial alizarine. That may not be the most exact, nor a very exact, name. But, the patent law does not prescribe how patented articles shall be named. It is described by an exact mode of production, that will not produce anything else. Those who are able to produce it, and those who use it, have no difficulty in knowing or using it. Its character is so complex and intricate, that everything to be found in it could not be told then, and, perhaps, cannot be now. There is nothing in the law that requires all its constituent parts to be describ-

ed, set forth, or known. The law required the inventors to file such written description of it, and of the manner and process of making, compounding and using it, "in such full, clear, concise and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound and use the same." Act July 4, 1836, § 6, (5 Stat. 119;) Act July 8, 1870, § 26, (16 Stat. 201;) Rev. St. § 4888. This is all the law required in this behalf, and, it is shown by the testimony, both of those skilled in the art and science to which this substance appertains, and with which it is most nearly connected, and those dealing in and making practical use of it, has been done. Those wishing to use it know what to apply for to obtain it, and how to make use of it, when obtained. It is not a mere scientific abstraction, but it is an article of commerce, useful in the art of coloring, that can be bought, sold, handled and consumed. The inventors appear to have done all that could be done, and all that was required, or would be useful, in describing it.

It is insisted, that, at the time of this invention, this product was old, and as well known as it was afterwards, and that what was invented was, in reality, merely a new process of producing it. Whether the product was new with the invention, or was known before, is a question of fact, to be determined upon the evidence. Chemically pure alizarine was unquestionably well known among chemists. Madder alizarine was well known among chemists and artists in dyes. If this is the same as either, it could not be a new invention. If not the same as either, it is not claimed that it is the same as any other known thing. The chemists examined as witnesses on each side are of such eminent learning and undoubted character, that the solution of this question is not involved with such difficulties as are sometimes to be encountered in settling questions of fact. A careful examination of the testimony of Professor Chandler, a witness for the defendants, and that of President Morton and Professors Hedrick and Ordway, witnesses for the plaintiff, shows that he differs from them more about names of things, the construction of terms, and inferences to be drawn, than about the actual existence of material facts. Madder alizarine contains chemically pure alizarine, expressed by the chemical notation $C_{14}H_8O_4$. So does this product. So far the witnesses agree; and, so far as that particular ingredient is concerned, the two substances are identical. He regards that as the important thing, and the presence of the other things which each contains, as unimportant and useless, if not injurious, accidents. That other things do exist in each, as they testify, he does not deny. They say that this product contains isopurpurine, anthrapurpurine, monoxanthraquinone, and some other less important in-

gredients, not named, which were not only not ingredients of either pure alizarine, or madder alizarine, but were not known at all until they were brought out by this invention. He says that purpurine was discovered by Collin in 1828, and anthraquinone by Dumas and Laurent in 1832. Purpurine is chemically different from isopurpurine or anthrapurpurine, and anthraquinone from monoxanthraquinone, as here understood. He does not say that any dye stuff before that of Graebe and Liebermann ever contained isopurpurine, anthrapurpurine and monoxanthraquinone, with pure alizarine, as theirs did and does. So, upon the testimony that is not really contradictory, their product was a new composition of matter. He says these things are mere impurities, whose presence is not wanted, and which are tolerated, because it is better to endure them than removing them, and he produces exhibits to show what colors may be made upon fabrics with them and without them. The others say that they are useful coloring agents, and exhibits are produced to show that fact. From all it appears, that they are influential as coloring agents, in producing results different from those that can be produced without them. So that the product of these inventors, containing them, was not only a new composition, but a new dye stuff. That it is useful, as other coloring materials are useful, is beyond any question. From these considerations it appears that Graebe and Liebermann invented a new and useful composition of matter, for which they properly obtained their original patent, and, so far as is open to inquiry here, their reissued patent.

The claim that the defendants do not infringe rests, apparently, upon the idea, that they only use the product of a different process, and not that they do not use or vend dye stuff substantially the same as this.

The case of Badische Anilin & Soda Fabrik v. Hamilton Manuf'g Co., [Case No. 721,] in the district of Massachusetts, before the late eminent Circuit Judge Shepley, covers most of the questions made in this case, but not all of them, for, there is evidence in this case that does not appear to have been in that, and some questions are made here that do not appear to have been made there. So far as that case goes, it is an ample authority for the decision here reached; and, upon the facts found here, it goes nearly, if not quite, as far as this case does.

Let a decree be entered for the plaintiff, establishing the validity of the patent, and for an injunction and an account of profits and damages, occasioned by the infringement, according to the prayer of the bill, with costs.

[For other suits involving the same patent, see Badische Anilin & Soda Fabrik v. Cochrane. Case No. 719; Cochrane v. Badische, Anilin & Soda Fabrik, 111 U. S. 293. 4 Sup. Ct. 455; Badische Anilin & Soda Fabrik v. Cummins. Case No. 720; Same v. Hamilton Manuf'g Co., Id. 721.]